## CIRCUIT COURT OF WARREN COUNTY

George Baggarly et al.

v.

Ray Cooper et al.

### Case No. (Chancery) 4862

C & B IGA Foodliner, Ltd.

v.

George Baggarly et al.

### Case No. (Chancery) 4873

### September 12, 1986

By JUDGE HENRY H. WHITING

A minority stockholder complains of the issuance of a stock option by the vote of the directors to the majority stockholder and his wife at a differential in value of $1,243.68 per share over the agreed purchase price of $1.00 per share, which permitted them to purchase twenty-two shares of stock and thus obtain a bargain of $27,382.00. The granting of this option is allegedly justified as a bonus for unusual services rendered by the stockholder and his wife for the preceding year and would mean their total annual compensation would be $90,952.90, they having already received $63,591.94 in regular salary. The following is a schedule of the salaries and bonuses paid all stockholders:

|  | Ray Cooper | Elizabeth Cooper | Both Coopers | George Baggarly |
|---|---|---|---|---|
| 1981 (4th Qtr) | $ 2,800 | $ 800 | $ 3,600 | $ 2,800 |
| 1982 | 18,200 | 6,200 | 24,000 | 18,200 |
| 1983 - Salary | 20,750 | 17,200 |  | 18,200 |
|     - Bonus | 16,722 | 10,783 |  | 11,343 |
|  | ------- | ------- |  | ------- |
|  | $37,472 | $28,073 | $65,545 | $29,543 |
| 1984 - Salary | $22,500 | $15,750 |  | $12,250 |
|     - Bonus | 14,109 | 14,109 |  | (Left 7/84) |
|  | ------- | ------- |  |  |
|  | $36,609 | $29,859 | $66,468 |  |
| 1985 - Salary | $26,000 | $18,200 |  |  |
|     - Bonus | 25,825[1] | 20,849[2] |  |  |
|  | ------- | ------- |  |  |
|  | $51,825 | $39,049 | $90,874 |  |

While Courts should not substitute their judgment for that of the directors and accord every action of the directors the presumption of good faith and proper exercise of discretion, in my opinion this stock option cannot be justified because bonuses or stock options granted by the directors to other director-employees[3] for services already rendered are gifts and not compensation and cannot supply the necessary consideration for the issuance of stock options. This stock bonus was not submitted to the stockholders but only to the directors.

The Court has not been able to find any Virginia case directly in point but the authority elsewhere seems to be consistent in holding that stock options or bonuses for past services granted by directors are invalid and can be set aside by a minority stockholder.

---

[1] Of this $25,825, $15,382 represented the stock "bonus."

[2] Of this $20,849, $12,000 represented the stock "bonus."

[3] Section 13.1-646 requires a provision in the charter to grant stock options by directors to officers and employees of the corporation.

There is authority that bonuses cannot be granted to officers or directors--at least, as against the protest of stockholders--by way of compensation for services already rendered gratuitously or by way of increased compensation for services already rendered for a prescribed compensation. Certainly, the directors cannot, in the absence of special authorization, vote themselves "back pay" as compensation for services theretofore rendered or vote themselves retroactive increases of salary. . . However, the rule precluding awards or compensation for past services has not been without exception, as in the case of an implied contract, or where the amount awarded is not unreasonable in view of the services rendered, or where the stockholders consent thereto. § 1939, *Corporations*, 18B Am. Jur. 2d 793-794.

The only case cited for the proposition that if the amount is not unreasonable the fact that the services have been rendered would not vitiate the bonus is a Michigan case, *Wiseman* v. *Musgrave*, 16 N.W.2d 60 (Mich. 1944). I have read the *Wiseman* case and it contained evidence of a *previous* agreement fixing compensation which was paid *later*. I quote from the opinion:

In the last analysis the issue narrows itself down to one of fact--that is, to a determination of whether or not honestly and fairly services worth $75.00 a month to the corporation were rendered by the claimant, Mr. Musgrave. The fact that this money was paid after he had severed his connection with the company and upon the vote of the successor stockholders and directors might raise a puzzling problem in the effort to hold Mr. Musgrave for official misconduct after he had ceased to be an official. This point becomes unnecessary to determine however. It may be assumed, reasonably, that this is not a trumped-up charge of $75.00 a month which was conceived on the eve of dissolution and then spread backward over the books to give it an air of legitimacy. It has its Genesis in the minutes of the corporation several

years before the dissolution and was carried as an item payable month by month over a long period of time.

It does not take much intelligent work to be worth $2.50 a day, and the Court does not hesitate to find that the efforts contributed by Mr. and Mrs. Musgrave to this business were worth that amount of money. This is the controlling finding in the case and makes any other determination of solvency or insolvency or of any other issues unnecessary. *Id.*, at 62.

Volume 3A *Fletcher on Corporations* (1975 Rev. Ed.), page 154, points out: "directors cannot vote themselves stock bonuses for certain acts where they have received pay for such acts," citing a number of cases in support thereof. *Holthusen* v. *Edward G. Bed Mfg. Co.*, 52 F. Supp. 125, 129 (E.D. Pa. 1943), in dealing with actions for past services of employees, held: "past services of employees to whom options are granted do not constitute consideration for their grant," citing a number of cases in support thereof. West Virginia dealt with this question in *Felsenheld* v. *Bloch Brothers Tobacco Co.*, 192 S.E. 545 (W.Va. 1937), which held that a bonus for work already done could not be granted against the protest of a minority stockholder since it was a gift.

In *Hurt* v. *Cotton States Fertilizer Co.*, 159 F.2d 52 (5th Cir. 1947), the Court did not say that the retroactive bonuses were void *per se* but they were suspect unless their propriety was made clearly to appear in the following language:

We need not write extensively on the legal principles governing the voting of bonuses, that is increased compensation for services already rendered gratuitously or for a prescribed compensation, where there is neither express or implied understanding that additional compensation may be granted. They are well settled and well known. Under well established principles of corporation law, directors and officers are quasi-trustees for the corporation and the stockholders, they hold office under an implied obligation to serve them faithfully, they may take no personal advantage of their

possession of power. As to bonuses, which are merely gratuitous payments, and as to similar retroactive increases of salary, it is Hornbook law that, except where there has been an express or implied understanding that they may be granted if conditions warrant, there is no consideration for them and their grant by the directors alone will not sustain them against attack by stockholders. It is true that normally the stockholders may grant them or ratify their granting. Even they may not do so, however, with the purpose or the result of overreaching or working a fraud or imposition on the corporation, the minority stockholders or other unprotected interests. It is sufficient for the purpose of this case to say: that gratuitous bonuses and additional compensation granted by directors for services already rendered under fixed salaries are normally without consideration in law; that they are, therefore, suspect and will be readily upset unless their propriety is made clearly to appear; that where, as was the case here, in respect of the additional compensations awarded retroactively in June, 1943, the fact that the directors who voted them were also owners of all the common stock will not save them from attack; and that they will be disallowed if it is made to appear that either their purpose or their result has been not to award reasonable compensation for services, but to impose upon or overreach preferred stockholders. *Id.*, at 58.

The Delaware Court impliedly held that a majority of the stockholders might ratify a bonus plan for past services in *Kerbs* v. *California Eastern Airways, Inc.*, 91 A.2d 62, 34 A.L.R.2d 850 (Del. 1952), by voiding the plan when it was not ratified by the stockholders since it was submitted to them as a compensation plan in consideration of *future* services and not in consideration of *past* services rendered by the corporate officers. Contrasted with these holdings is *Landstreet* v. *Meyer*, 29 So. 2d 653 (Miss. 1947), where a minority stockholder successfully challenged a retroactive salary award by the *stockholders*

to the president of the company based on services already rendered.

Perhaps Virginia would approve a bonus plan for directors adopted by a majority of the *stockholders* for past services under certain circumstances, a consistent pattern of prior bonuses for such past services, bonuses clearly fair and justified and in no sense of the word excessive and shown to be of direct benefit in the future to the stockholders generally. However, in this case no such pattern of prior stock bonuses has been shown, no expectation of substantial future benefit to the corporation, especially in view of the fact that the stock bonus was paid at a time when this small closely held corporation was known to be one in which the principal stockholders were at odds, with it obvious that the minority stockholders' interest would have to be terminated one way or the other in the very near future. For these reasons the Court could not approve this stock option amounting to a retroactive payment of what amounts to a bonus to the Coopers despite its feeling that the Coopers did render quite valuable and extraordinary services to the corporation, although perhaps not as much as more than $90,000 worth in that one year, especially given the compensation received in previous years.