# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FRANCIS HENRY WHITE III, )
 )
   Plaintiff, )
 )
  v. ) C.A. No. N22C-12-124 PAW
 )
 )
LM GENERAL INSURANCE )
COMPANY, )
 )
   Defendant. )

Submitted: January 23, 2025
Decided: March 19, 2025

*Upon Consideration of Defendant's Motion for Summary Judgment;*

**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Brian E. Lutness, Esq., of Silverman, McDonald & Friedman, *Attorney for Plaintiff.*

Ronald W. Hartnett, Esq., of the Law Office of Nancy Chrissinger Cobb, *Attorney for Defendant*.

**WINSTON, J.**

## I.    FACTUAL BACKGROUND

Defendant LM General Insurance Company moves for summary judgment under Superior Court Civil Rule 56, requesting judgment as a matter of law that there is no basis for Plaintiff to recover benefits under the purchased motor vehicle insurance policy.[1]

In May 2021, non-party Alex Mazer purchased an insurance policy on the Suzuki GSX R600 motorcycle with LM General Insurance on May 14, 2021 (the "Suzuki Policy").[2]  At the time of purchase, Mazer waived Underinsured Motorist ("UIM") benefits.[3]  Shortly thereafter, Mazer purchased a second insurance policy with LM General Insurance on a 2015 Chevrolet Traverse, on July 7, 2021 (the "Chevrolet Policy").[4]  Mazer added Uninsured ("UM") benefits to the Chevrolet policy.[5]  Approximately one month later, Plaintiff Francis Henry White III, Mazer's partner and a driver listed under the Suzuki Policy, was injured in a motor vehicle

---

[1] Mot. for Summ. J.

[2] Ans. Br. ¶ 4.  Alex Mazer married Francis Henry White after these claims were filed and, accordingly, is referred to as both "Alex Mazer" and "Alex White" within the record.  Because the policies in question were purchased under her maiden name, "Mazer," Alex White is referred to by her maiden name throughout this Memorandum Order and Opinion.

[3] *Id*.

[4] Ans. Br. ¶ 5.

[5] *Id*.

collision while operating the Suzuki motorcycle.[6]  Subsequently, White filed a complaint for UIM benefits under the Suzuki Policy.[7]

Because the collision involved a vehicle insured under the Suzuki Policy, LM General Insurance denied UM/UIM coverage, finding that Mazer had properly waived UM/UIM benefits on the Suzuki Policy under 18 *Del. C.* § 3902(a).[8]  White, however, alleges that LM General Insurance failed to make "a meaningful offer" of UM/UIM benefits for the Suzuki Policy under 18 *Del. C.* § 3902(b).[9]  Accordingly, White requests the Court to "reform the policy to include increased UM/UIM benefits equal to those included on the Chevrolet Policy."[10]

The parties do not contend any factual disputes remain.  LM General Insurance argues in favor of summary judgment as a matter of law because there is no basis for UM/UIM benefits for White under the Suzuki Policy.[11]  White opposes summary judgment on the ground that LM General Insurance was required to offer Mazer "UM/UIM coverage for *all* her vehicles" insured with LM General

---

[6] Ans. Br. ¶ 2.

[7] *See* Second Am. Compl. (D.I. 23); *see also* Ans. Br. ¶ 3-4.

[8] Ans. to Second Am. Compl. ¶¶ 9-10.

[9] Second Am. Compl. ¶ 9.

[10] *Id.*

[11] Mot. for Summ. J. ¶ 12.

3

Insurance.[12]  In support of his argument, White asserts that there would have been a duty to offer UIM benefits if both vehicles were insured under the same policy.[13] Thus, he posits, the fact that the vehicles were insured under separate policies with LM General Insurance cannot be used to "allow[] [LM General Insurance] to avoid exact protections" of Section 3902(b).[14]

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where the record indicates there are no genuine issues of material fact and where, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.[15]  Summary judgment will not be granted when the record reflects a reasonable indication that a material fact is in dispute.[16]  "If the moving party shows that no material factual dispute exists, the burden shifts to the non-moving party to demonstrate the existence of a genuine issue of material fact."[17]

---

[12] Ans. Br. ¶ 11.

[13] *Id*. ¶ 8.

[14] *Id*. ¶ 10.

[15] Del. Super. Ct. Civ. R. 56(c).

[16] *Zapatero v. George & Lynch, Inc.*, 2017 WL 6000492 at *2 (Del. Super. Nov 29, 2017) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. Super. 1962), *rev'd in part on other grounds*, 208 A.2d 495 (Del. 1965).

[17] *Wells Fargo Bank, N.A. v. Williford*, 2011 WL 5822630 at *2 (Del. Super. Nov. 17, 2011) (first citing *Ebersole v. Lowengrub*, 180 A.2d 467, 469 (1962); and then citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

## III. ANALYSIS

UM and UIM coverage is governed by 18 *Del. C.* § 3902. In pertinent part, Section 3902 provides:

> a. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.
>
>> 1. No such coverage shall be required in or supplemental to a policy when rejected in writing, on a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy or upon any reinstatement, substitution, amendment, alteration, modification, transfer or replacement thereof by the same insurer unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as uninsured vehicle coverage. . . .
>
> b. Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include

5

underinsured bodily injury liability coverage. . . .

The Delaware Supreme Court held in *Humm v. Aetna Cas. & Sur. Co.* that "an insurance carrier's duty to provide a minimum level of uninsurance coverage under subsection (a) is *separate and distinct* from its duty, under subsection (b), to offer additional uninsured/underinsured coverage up to the amount of the basic liability policy."[18] Accordingly, the Court noted the legislature used distinct language in the two subsections and "intended to provide distinct requirements as to the purchase of a minimum level of uninsurance coverage [subsection (a)] and the purchase of additional uninsurance/underinsurance coverage [subsection (b)]."[19]

## A. SECTION 3902(B) IS INAPPLICABLE.

White correctly asserts that under subsection (b) "[e]very insurer shall offer to the insured the option to purchase additional coverage for personal injury or death...."[20] It is also accurate that an insurance provider must demonstrate it made a "meaningful offer" of the additional coverage when a material change is made to a policy.[21] But here, when provided with an opportunity to select UM/UIM coverage

---

[18] 656 A.2d 712, 712 (Del. 1995) (emphasis added).

[19] *Id.*

[20] 18 *Del. C.* § 3902(b).

[21] *See, e.g., Radulski v. Liberty Mutual Fire Ins. Co.,* 2020 WL 8676027 at *1 (Del. Super. Oct. 28, 2020) ("Under Delaware law, an insurer must make a meaningful offer of additional uninsured/underinsured motorist coverage at the time of any material policy change.")

on the Suzuki Policy, Mazer rejected it.  Thus, we must look to Section 3902(a).

## B. SECTION 3902(A) IS APPLICABLE, AND REFORMATION IS NOT AVAILABLE UNDER SECTION 3902(A).

Unlike subsection (b), subsection (a) does not require a meaningful offer and, instead, requires a valid written rejection of UM/UIM benefits.[22]  For a rejection to be valid, "it must be rejected on 'a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected.'"[23]  If UM/UIM coverage is validly rejected, "no consideration can be made regarding an offer of additional coverage" and "the 'meaningful offer' requirement under [Section] 3902(b) is inapplicable."[24]

The Court may grant summary judgment in favor of an insurer where the insured validly rejected and thereby expressly waived UM/UIM coverage under a minimum policy.[25]  Here, it is undisputed that the purchaser of the Suzuki Policy, Mazer, expressly waived uninsured motorist coverage on the form provided by LM General Insurance.[26]  The Court finds this constitutes a valid waiver of UM/UIM coverage in conformance with Section 3902(a).

Although not alleged in his Complaint, on summary judgment, White

---

[22] *Id.*

[23] *Heasley v. Allstate Prop. & Cas. Ins. Co.,* 2022 WL 951261 at *3 (Del. Super. Mar. 28, 2022).

[24] *Id.*

[25] *Id.* at *4.

[26] Mot. to Dismiss, Ex. C.

contends the change made to the Chevrolet Policy triggered the need for a "meaningful offer" to be made under the Suzuki Policy for UM/UIM benefits.[27] In support, White cites to *Radulski v. Liberty Mutual Fire Ins. Co.*, in which the Court ordered reformation of a policy to reflect increased UM/UIM coverage where the insurer did not make a meaningful offer of additional UM/UIM coverage to the insured within the meaning of Section 3902(b).[28] There, the "material change" in the policy which required the insurer to make a timely "meaningful offer" took place "when the policy changed with respect to the identity of the named insured."[29]

Here, a change occurred when Mazer removed a vehicle from the Chevrolet Policy.[30] It is true that under Delaware law a change in vehicles under a policy is a "material change" which requires a "meaningful offer" of additional coverage under Section 3902(b).[31] However, no such requirement exists under Section 3902(a).[32]

Unlike here, in *Radulski*, the Court considered whether the plaintiff was entitled to reformation of the policy under Section 3902(b) because the insurance

---

[27] Ans. Br. ¶ 10.

[28] *Radulski*, 2020 WL 8676027 at *8.

[29] *Id*. at *5.

[30] Tr. Mazer dep. 22:6-22.

[31] *Heasley*, 2022 WL 951261 at *4.

[32] *Id*.

provider failed to make a "meaningful offer" of *additional* UM coverage.[33]  Here, White does not seek reformation to obtain *additional* UM coverage on the policy at issue—the Suzuki Policy.  Instead, he seeks to reform a policy that contained no UM/UIM coverage in the first instance.  Under *Radulski*, there is no requirement to offer additional coverage under Section 3902(b) where a plaintiff undisputedly waived UM/UIM coverage.[34]  No consideration can be made regarding an offer of additional coverage when the initial coverage has been waived.[35]  Thus, the "meaningful offer" requirement under Section 3902(b) is inapplicable.[36]

Accordingly, because Mazer validly waived UM/UIM coverage in conformance with 18 *Del. C.* § 3902(a), and because LM General Insurance did not incur a duty to make a meaningful offer of additional uninsured/underinsured motorist coverage under 18 *Del. C.* § 3902(b), this Court cannot order reformation of the Suzuki Policy.

## IV.  CONCLUSION

Under Rule 5, LM General Insurance is entitled to judgment as a matter of law.  The Court may grant summary judgment in favor of an insurer where, as here,

---

[33] *Radulski*, 2020 WL 8676027 at *1.

[34] *Heasley*, 2022 WL 951261 at *8.

[35] *Id*.

[36] *Id*.

the insured validly rejected and thereby expressly waived UM/UIM coverage under a minimum policy. White was insured under a policy purchased by Mazer, and Mazer expressly waived UM/UIM coverage under the policy in writing as required under 18 *Del. C.* § 3902(a). Section 3902(b) is not applicable.

Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

*/s/ Patricia A. Winston*
**Patricia A. Winston, Judge**

10